**IN THE UNITED STATES DISTRICT COURT FOR THE**

**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **DAVID JOSE ESCALONA,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-26-828-G** |
| | ) | |
| **TODD BLANCHE, et al.,** | ) | |
| | ) | |
| **Respondents.** | ) | |

**REPORT AND RECOMMENDATION**

Petitioner David Jose Escalona, a Venezuelan citizen proceeding with counsel, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 ("Petition") challenging his detention by the U.S. Immigration and Customs Enforcement ("ICE").[1] (Doc. 1).[2] United States District Judge Charles B. Goodwin referred the matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B)-(C). (Doc. 7). In accordance with the expedited briefing schedule, (Doc. 9), Respondents timely filed a Response to the Petition.[3] (Doc. 16). Petitioner timely filed a reply. (Doc. 17). For the

---

[1] Petitioner is currently housed at the Midwest Regional Reception Center in Leavenworth, Kansas, but was detained at Kay County Detention Center in the Western District of Oklahoma when he filed his Petition. (Doc. 1, at Ex. 1; Doc. 16, at 1). Neither party suggests Petitioner's transfer impacts this Court's jurisdiction to adjudicate the Petition.

[2] Citations to the parties' filings and attached exhibits will refer to this Court's CM/ECF pagination.

[3] The response was not filed on behalf of Respondent Don Jones, Warden of the Kay County Detention Center, because he is not a federal official. (Doc. 16, at 1 n.1). The undersigned concludes that a separate response from Don Jones is not necessary to resolve this matter.

reasons set forth below, the undersigned recommends that Petitioner be **GRANTED** habeas relief and that the Court order Respondents to provide Petitioner with an individualized bond hearing.

## I. Factual Background and Procedural History

Petitioner is a citizen of Venezuela. (Doc. 1, at Ex. 2, at ¶ 1). In 2012, after visiting the United States, Petitioner alleges he became affiliated with the Un Nuevo Tiempo, a Venezuelan political opposition party to Maduro's government, and he developed a romantic relationship with a U.S. citizen. (*Id.* at ¶¶ 13-27). After returning to Venezuela, Petitioner alleges he faced political persecution from people affiliated with the Maduro government. (*Id.* at ¶¶ 28-34). Thereafter, Petitioner fled to the United States and married his U.S. citizen partner on October 24, 2014. (*Id.* at ¶ 22). On March 15, 2015, Petitioner's status was adjusted to a Conditional Resident based on his marriage to a citizen. (Doc. 1, at Ex. 4, at 3).[4] In 2016, Petitioner filed for divorce and re-settled in Florida. (Doc. 1, at Ex. 2, at ¶ 45). From June 2021 through November 2024, Petitioner alleges he became reliant on drugs and accumulated a significant criminal history across four states. (*Id.* at ¶¶ 48-52; *see also* Doc. 1, at Ex. 3 at 2-41 (detailing Petitioner's criminal history); Doc. 16, at 2 (same)).

On November 27, 2024, ICE arrested Petitioner upon his release from state criminal custody. (Doc. 1, at Ex. 4, at 7-8). That same day, ICE initiated removal proceedings though the issuance of a Notice to Appear, and charged him (1) as a non-citizen who after

[4] This status was ultimately terminated on February 13, 2020, because Petitioner failed to appear for an interview and his petition was considered abandoned. (Doc. 16, at 2 n.2).

admission was convicted of violation of a law relating to controlled substances under 8 U.S.C. § 1227(a)(2)(B)(i), and (2) as a lawful permanent resident whose status was terminated under § 1227(a)(1)(D)(i). (Doc. 1, at Ex. 4, at 3, 6).

On January 13, 2025, Petitioner filed an Application for Asylum, Withholding of Removal, and protection under the Convention Against Torture. (Doc. 1, at Ex. 5, at 2-13). On March 24, 2025, an immigration judge ordered him removed to Venezuela but simultaneously granted his application for withholding of removal. (Doc. 1, at Ex. 6, at 2). At this point, it is undisputed Petitioner had a final order of removal. (Doc. 1, at 2; Doc. 16, at 2 n.3). The next day, the Government informed Petitioner it was seeking to remove him to a third country, Guatemala, but that Guatemala had denied the request. (Doc. 1, at Ex. 7, at 3). Petitioner alleges that on May 19, 2025, the Government informed him they did not have any updates about his removal to a third country. (*Id.* at 2).

Months later, on September 7, 2025, the Government provided Petitioner written notice he would be removed to Mexico. (Doc. 1, at Ex. 12, at 2). Petitioner requested a "fear interview" to express his fear he would be harmed if deported to Mexico. (*See* Doc. 1, at Ex. 13, at 2). On September 17, 2025, Petitioner filed an emergency motion for a stay of removal to Mexico in the Immigration Court. (Doc. 1, at Ex. 8, at 2-10). He simultaneously sought to reopen his immigration case to seek withholding of removal to Mexico. (Doc. 1, at Ex. 9, at 2-12). On September 18, 2025, the immigration judge entered an administrative stay of removal pending the decision to reopen the case. (Doc. 1, at Ex. 10, at 2). On October 6, 2025, Petitioner filed a petition for review with the Seventh Circuit

of the Government's removal order to Mexico, alleging DHS had no authority to issue the order, which remains pending. (Doc. 16, at 4 n.6).

On October 20, 2025, the immigration judge denied Petitioner's motion to reopen as premature. (Doc. 1, at 11). However, on November 10, 2025, Petitioner filed a renewed motion to reopen and a motion for stay of removal based on inconsistencies with ICE's fear determination regarding his removal to Mexico. (*Id.*) On November 18, 2025, Petitioner also filed an emergency motion for stay of removal with the Seventh Circuit. (Doc. 1, at Ex. 15, at 2). On November 18, 2025, both the immigration judge and the Seventh Circuit granted Petitioner a stay of removal. (Doc. 1, at Ex. 14, at 2; Doc. 1, at Ex. 15, at 2).

On February 11, 2026, the immigration judge granted Petitioner's motion to reopen. (Doc. 1, at Ex. 16, at 2). On April 20, 2026, the immigration judge ordered Petitioner removed to Mexico but simultaneously granted his application for withholding of removal. (Doc. 16, at Ex. 2, at 1). A review of the EOIR Automated Case Information shows neither party appealed the immigration judge's decision. *See* EOIR, Automated Case Information, *at* https://acis.eoir.justice.gov/en/ (last accessed Aug. 12, 2026); *see also* (Doc. 19, at 3 (confirming neither party appealed the order of removal to Mexico); Doc. 22, at 1 (same)). Petitioner's order of removal to Mexico became final on May 20, 2026. (Doc. 21, at 1).

During these proceedings, Petitioner remained detained at immigration detention centers in Kansas and Oklahoma. (*See* Doc. 1, at Ex. 17 at 2). He has not been afforded a bond hearing because he has been subject to mandatory detention pursuant to 8 U.S.C. §

1226(c). (Doc. 16, at 5). On April 16, 2026, Petitioner filed this Petition.[5] (Doc. 1). At the time he filed his Petition, Petitioner had been detained for 16 months.

## II. Petitioner's Claims and Respondents' Responses

Petitioner raises only one ground for relief, alleging his 16-month long detention is unreasonably prolonged in violation of his due process rights.[6] (Doc. 1, at 27-28). For relief, Petitioner seeks immediate release, or alternatively, that the Court hold its own custody hearing where the government must prove by clear and convincing evidence that he must remain in custody. (*Id.* at 28).

Respondents argue (1) Petitioner is not entitled to procedural due process when subject to mandatory detention under § 1226(c); (2) Petitioner's detention does not violate substantive due process because his detention is not "indefinite" or "permanent" and "will end with his removal;" and (3) even if the Court conducts a substantive due process analysis, Petitioner has not demonstrated his detention violates his substantive due process rights. (Doc. 16, at 6-15).

On July 27, 2026, the Court ordered the parties to file supplemental briefs to confirm whether either party appealed Petitioner's order of removal to Mexico and explain whether

[5] Petitioner alleges he was not required to exhaust his administrative remedies before filing his Petition because he is subject to mandatory detention and is not eligible for a custody hearing before an immigration judge. (Doc. 1, at 13-14). Respondents do not dispute this assertion.

[6] Petitioner does not specify in the Petition whether he is alleging a violation of his procedural or substantive due process rights. However, in reply, Petitioner clarifies he is alleging a violation of both his procedural and substantive due process rights. (Doc. 17, at 2-3).

the Petition became moot. (Doc. 18). Both parties timely filed supplemental briefs in response. (Doc 19; Doc. 21). In his supplemental brief, Petitioner argues: (1) his due process claim is not moot because the Court can still provide relief; (2) he is entitled to immediate release under *Zadvydas v. Davis*, and (3) alternatively, he is entitled to release or a bond hearing based on his unconstitutionally prolonged detention whether he is detained under § 1226(c) or § 1231. (Doc. 19, at 4-16). Respondents, on the other hand, assert: (1) Petitioner's detention is mandatory under § 1231(a)(2)(A);[7] (2) Petitioner's claims are moot because he sought relief pursuant to § 1226(c); and (3) any claim pursuant to *Zadvydas* is premature. (Doc. 21, at 1-2).

## III. Standard of Review

To obtain habeas corpus relief, Petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[T]he primary federal habeas corpus statute, 28 U.S.C. § 2241, confers jurisdiction upon the federal courts to hear . . . challenges to the lawfulness of immigration-related detention." *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Soberanes v.*

[7] To the extent Respondents briefly allege Petitioner is subject to a 90-day removal period, which requires mandatory detention pursuant to § 1231(a)(2)(A), they fail to cite any case law that shows Petitioner is subject to a new removal period and renewed mandatory detention for each final order of removal or that his removal period did not expire 90 days after his initial order of removal to Venezuela became final in March 2025. (*See* Doc. 21, at 1-2); *see also* 8 U.S.C. § 1231(a)(1)(A) (stating "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days"). Further, Respondents do not explain why the Court should not consider Petitioner's claim that his prolonged detention violates his right to due process even if he were within the 90-day removal period.

*Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) ("Challenges to immigration detention are properly brought directly through habeas.").

**IV. Petitioner Is Entitled to Habeas Relief Because His Prolonged Detention Violates Due Process.**

**A. The Petition Is Not Moot.**

As an initial matter, Respondents contend that because Petitioner "sought relief from his mandatory detention under 8 U.S.C. § 1226(c)," and "because he is no longer detained under that provision but is instead detained under § 1231(a)(1)(A), his claim is now moot." (Doc. 21, at 1-2).

"Mootness is a threshold issue because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction." *McClendon v. City of Albuquerque*, 100 F.3d 863, 867 (10th Cir. 1996). The "[c]onstitutional mootness doctrine is grounded in the Article III requirement that federal courts may only decide actual ongoing cases or controversies." *Unified Sch. Dist. No. 259 v. Disability Rts. Ctr. of Kan.*, 491 F.3d 1143, 1147 (10th Cir. 2007) (quotation omitted). A live controversy ceases to exist, and a case becomes moot, when "it becomes impossible for a court to grant effective relief." *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1311 (10th Cir. 2010) (citation and quotation omitted).

Respondents argue the Petition is moot because Petitioner's "current detention status [is] based on different legal ground than those relied upon in [the Petition]." (Doc. 21, at 2) (quoting *Al-Ani v. Gonzales*, 171 F. App'x 715, 718 (10th Cir. 2006)). The undersigned disagrees. Petitioner does not challenge the legality of § 1226(c), nor does he

seek relief pursuant to that statute. Rather, he challenges the legality of his detention, and he seeks relief under the Fifth Amendment's due process clause. (*See, e.g.*, Doc. 1, at 27 (alleging a "Violation of Fifth Amendment Rights to Due Process" as Count One); *id.* at 28 (seeking a declaration that Petitioner's "prolonged detention violates the Due Process Clause of the Fifth Amendment")). Petitioner's prior assertion that his detention is mandated by § 1226(c) does not materially impact the constitutional question presented in the Petition or render it "impossible for [the Court] to grant effective relief." *Abdulhaseeb*, 600 F.3d at 1311; *see also Vital v. Baltasar*, No. 26-CV-01625-NYW, 2026 WL 1965075, at *2 (D. Colo. July 7, 2026) ("Petitioner's mistaken assertion that his detention is mandated by § 1226(c) [when he is detained under § 1231] does not materially impact the constitutional question presented in the Petition or render it impossible for the Court to grant effective relief.") (internal quote and brackets omitted). Accordingly, the Court should conclude the Petition is not moot and a live case or controversy remains.

**B. Petitioner's Detention Violates His Substantive Due Process Rights.**

Petitioner's sole habeas claim alleges his detention is so prolonged that it violates his substantive due process rights. (Doc. 1, at 17-24). He does not argue that his prolonged detention violates the Immigration and Nationality Act or *Zadvydas*. (*See id.*); *see also Arostegui-Maldonado v. Baltazar*, 794 F. Supp. 3d 926, 938 (D. Colo. 2025) (explaining that "*Zadvydas* involved a *statutory* interpretation of § 1231(a)(6)" and recognizing that "as-applied constitutional challenges to prolonged detention are separate and distinct from the statutory prohibition against indefinite detention embodied in *Zadvydas*").

It is undisputed that when Petitioner filed his Petition, he was detained under 8

U.S.C. § 1226(c), which requires mandatory detention.[8] (Doc. 1, at 14; Doc. 16, at 5). While "the Supreme Court has rejected facial challenges to mandatory detention under § 1226(c)," in *Demore v. Kim*, 538 U.S. 510 (2003), "noncitizens detained under § 1226(c) may, in some circumstances, bring as-applied Due Process challenges to their prolonged detentions." *Hernandez v. Mullin*, No. CIV-26-475-R, 2026 WL 1625669, at *1-2 (W.D. Okla. June 5, 2026); *see also, e.g., Jalloh v. Garland*, No. CIV-22-908-R, 2023 WL 3021514, at *2-3 (W.D. Okla. Mar. 9, 2023) ("*Jalloh I*") (finding it appropriate to conduct a reasonableness analysis to determine whether the petitioner's prolonged mandatory detention under § 1226(c) was unconstitutional); *Nguyen v. Carter*, No. 26-3008-JWL, 2026 WL 522650, at *2 (D. Kan. Feb. 25, 2026) (same); *Smith v. Barr*, 444 F. Supp. 3d 1289, 1301 (N.D. Okla. 2020) (same). "[A]t some point, detention can become so prolonged as to become unreasonable or unjustified, at which time a petitioner will be entitled to an individualized bond hearing." *Jalloh I*, 2023 WL 3021514, at *2 (citation and quotation omitted).

However, it is also undisputed that Petitioner is now detained pursuant to 8 U.S.C. § 1231. (Doc. 19, at 8; Doc. 21, at 1). "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Demore*, 538 U.S. at 523 (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). Indeed, this protection applies to "all

[8] The undersigned concludes that ultimately it is not necessary for the Court to decide whether Petitioner was detained under § 1226(c) at the time the Petition was filed. The undersigned further concludes the Court does not need to decide whether § 1231(a)(6) became inapplicable when the immigration judge reopened Petitioner's immigration proceedings in February 2026.

'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" that the Due Process Clause protects. *Id.* at 690. Under these due process principles, civil immigration detention is constitutional only in "certain special and narrow nonpunitive circumstances," and it must "bear[] [a] reasonable relation to the purpose" for which the non-citizen was detained. *Id.* (citation and quotation omitted). The Supreme Court has identified those purposes as mitigating the risk of danger to the community and preventing flight. *Id.* at 690-91; *see also Demore*, 538 U.S. at 527-28. And when a non-citizen's detention becomes unreasonably prolonged in relation to these purposes, his or her continued detention may violate the Fifth Amendment. As such, non-citizens detained under § 1231(a)(6) past the *Zadvydas* six-month presumptively constitutional period may bring an as-applied due process challenge to his or her detention under the statute. *See Johnson v. Arteaga-Martinez*, 596 U.S. 573, 583 (2022) (leaving petitioner's as-applied due process claim alleging unconstitutional prolonged detention "for the lower courts to consider in the first instance").

However, even where a non-citizen is subject to a final order of removal and detained pursuant to § 1231, courts in the Tenth Circuit have "analyze[d] whether [a non-citizen's] detention has become unconstitutionally prolonged under the six-factor balancing test set forth in *Singh v. Choate*, No. 19-cv-00909-KLM, 2019 WL 3943960, at *5 (D. Colo. Aug. 21, 2019)." *Juarez v. Choate*, No. 1:24-CV-00419-CNS, 2024 WL 1012912, at *6 (D. Colo. Mar. 8, 2024) (disagreeing with respondents that the *Singh* test is

not appropriate in the § 1231 post-removal context), *appeal dismissed* (June 24, 2024); *see also Vital*, 2026 WL 1965075, at *3 (same); *Vizguerra-Ramirez v. Baltazar*, No. 25-cv-00881-NYW, 2025 WL 3653158, at *11-13 (D. Colo. Dec. 17, 2025) (agreeing with the analysis in *Juarez* and applying the *Singh* factors for a non-citizen detained under § 1231); *Ramirez v. Bondi*, No. 25-cv-01002-RMR, 2025 WL 1294919, at *6 (D. Colo. May 5, 2025) (same), *appeal docketed*, No. 25-1263 (10th Cir. July 8, 2025);[9] *Arostegui-Maldonado*, 794 F. Supp. 3d at 939-42 (same); *L.G. v. Choate*, 744 F. Supp. 3d 1172, 1181 n.14 (D. Colo. 2024) (noting "if Petitioner had filed his petition when he was detained under 8 U.S.C. § 1231, the six-factor prolonged detention analysis [from *Singh*] would have been applicable"). Courts have reasoned that "there appears to be little substantial distinction between the liberty interest of noncitizens detained pursuant to § 1226(c) and § 1231(a)(6), because regardless of the stage of the proceedings, the same important interest is at stake—freedom from prolonged detention." *Juarez*, 2024 WL 1012912, at *6 (citation and quotation omitted); *see also Vital*, 2026 WL 1965075, at *3 (same).

Thus, although the *Singh* factors were first applied to determine whether a non-citizen's prolonged detention under § 1226(c) was constitutional, *see, e.g., Jalloh v. Garland*, No. CIV-22-908-R, 2023 WL 3690259, at *3 (W.D. Okla. Apr. 26, 2023) ("*Jalloh II*") (citation modified), *report and recommendation adopted*, 2023 WL 3690252 (W.D. Okla. May 26, 2023), courts in this Circuit "have determined that application of the

---

[9] On July 24, 2026, the Tenth Circuit abated the appeal pending the Supreme Court's decision in *Genalo v. Black*, No. 25-886. *Munoz Ramirez v. Blanche*, Case No. 25-1263, Order, Doc. 56 (10th Cir. July 29, 2026).

*Singh* factors in the § 1231 context is appropriate." *Vital*, 2026 WL 1965075, at *3. Accordingly, the Court should follow other district courts in this Circuit and "appl[y] the *Singh* factors when assessing a noncitizen petitioner's *constitutional* challenge to prolonged detention without a bond hearing." *Arostegui-Maldonado*, 794 F. Supp. 3d at 938 (collecting cases).[10]

The six-factor test set out in *Singh* "[t]o determine whether a non-citizen's [mandatory] detention has been unconstitutionally prolonged," so as to violate Petitioner's substantive due process analyzes "(1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal." *Jalloh II*, 2023 WL 3690259, at *3 (citation modified).

**1. The Total Length of Detention**

Petitioner has been detained since November 27, 2024, which amounts to over 20 months of continuous detention. (Doc. 1, at Ex. 4, at 7-8). In analogous cases where petitioners were detained for similar periods of time, courts in this Circuit have concluded that the first *Singh* factor weighed in favor of the petitioner. *See Jalloh II*, 2023 WL

---

[10] The undersigned is not persuaded by Respondents' assertion that "this Court should join the district courts that have held that where the case is proceeding efficiently though the immigration courts and the government has not caused unreasonable delay, the delay 'has not yet become so prolonged that it amounts to an arbitrary application of the statute.'" (Doc. 16, at 12) (quoting *Vukosavljevic v. Low*, No, 3:18-CV-1235, 2018 WL 6706691, at *2 (M.D. Pa. Dec. 20, 2018) and citing other out-of-Circuit cases).

3690259, at *4 (finding 18-month detention "weighs heavily in Petitioner's favor"); *Vital*, 2026 WL 1965075, at *4 (finding 18-month detention weighs in petitioner's favor); *Vizguerra-Ramirez*, 2025 WL 3653158, at *11 (finding 9-month detention weighs in petitioner's favor); *Arostegui-Maldonado*, 794 F. Supp. 3d at 939 (finding 20-month detention weighs in petitioner's favor); *Ramirez*, 2025 WL 1294919, at *6 (finding 16-month detention weighs in petitioner's favor). Further, "Respondents cite no cases suggesting that a detention of [20] months is reasonable." *Jalloh II*, 2023 WL 3690259, at *4. Thus, this first factor weighs heavily in Petitioner's favor.

**2. The Likely Duration of Future Detention**

"Second, the Court considers how long the detention will likely continue in the absence of judicial relief." *Jalloh II*, 2023 WL 3690259, at *5. "Courts examine the 'anticipated duration of all removal proceedings' — including administrative and judicial appeals — when estimating how long detention will last." *Id.* (internal quote omitted).

Respondents assert this factor is "either neutral or weigh[s] in the government's favor" because "[t]he length of any future detention rests squarely in the hands of [Petitioner], not the government, as the government continues to work diligently to remove him." (Doc. 16, at 14). However, Respondents' position requires the Court to penalize Petitioner for seeking withholding of removal to Mexico — a country where Petitioner alleges, and an immigration judge has now agreed, Petitioner will be persecuted. The Court should decline to do so. *Accord Vizguerra-Ramirez*, 2025 WL 3653158, at *12 (noting "courts have consistently declined to 'hold [a petitioner's] efforts to seek relief through the available legal channels against [her]"); *Chairez-Castrejon v. Bible*, 188 F. Supp. 3d 1221,

1229 (D. Utah 2016) ("An alien who would not normally be subject to indefinite detention cannot be so detained merely because he seeks to explore avenues of relief that the law makes available to him.") (quotation omitted). Further, while Petitioner has been ordered removed twice, he cannot be removed to those countries, and Respondents have not alleged they have identified a viable third country for removal.[11] Accordingly, Petitioner's detention could continue for months as Respondents attempt to identify a viable country for removal. *See Vizguerra-Ramirez*, 2025 WL 3653158, at *11 (finding that based on the withholdings-only proceedings and "possible re-initiation of removal proceedings" if successful, "detention will definitely terminate at some point, but that point is likely to be many months or even years from now") (citation and quotation omitted); *Juarez*, 2024 WL 1012912, at *7 (finding this factor weighs in petitioner's favor where "withholding-only proceedings before the IJ are now a certainty"). Thus, this factor also weighs in Petitioner's favor.

**3. The Conditions of Detention**

Courts next "consider whether the facility for the civil immigration detention is meaningfully different from a penal institution for criminal detention." *Jalloh II*, 2023 WL 3690259, at *5 (internal quote omitted). "The more that the conditions under which the alien is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Id.* (citation omitted). Petitioner alleges the conditions of confinement at his multiple detention facilities, including Kay County Detention Center, "resemble a

[11] Petitioner also has a pending appeal to the Seventh Circuit. (Doc. 1, at 19).

penal institution." (Doc. 1, at 20); *see Jalloh II*, 2023 WL 3690259, at *5 (finding "this factor weighs in Petitioner's favor" where Respondents conceded he was detained at Kay County Detention Center, a criminal correctional facility). Respondents concede "that the third factor—the conditions of confinement—likely weigh in [Petitioner's] favor." (Doc. 16, at 14).

Petitioner has also alleges his "health worsened without access to adequate health care" in detention, which "weigh[s] in favor of finding his prolonged detention unconstitutional. (Doc. 1, at 20); *see also Viruel Arias v. Choate*, No. 1:22-CV-02238-CNS, 2022 WL 4467245, at *2 (D. Colo. Sep. 26, 2022) (finding this factor favors petitioner where "the conditions of her detention are poor and exacerbated by her health complications" and even though she received mental health services while in detention, it was "insufficient . . . to explain how the conditions of [petitioner's] confinement differ from the conditions of penal confinement"); *Juarez*, 2024 WL 1012912, at *7 (same). Thus, this factor weighs in Petitioner's favor.

**4. Delays in the Removal Proceedings Caused by the Detainee**

The fourth and fifth factors consider the delays caused by the parties. Respondents contend "this factor should weigh heavily against [Petitioner]." (Doc. 16, at 13-14). "In considering delays in the removal proceedings caused by the detainee, courts should be sensitive to the possibility that dilatory tactics by the removable alien may serve not only to put off the final day of deportation, but also to compel a determination that the alien must be released because of the length of his incarceration." *Jalloh II*, 2023 WL 3690259, at *5 (internal quote omitted). Respondents assert Petitioner has caused delays by: (1)

fighting his removal to Mexico, and (2) intending to fight removal to any third country where he alleges a fear of persecution. (Doc. 16, at 13).

This Court, however, should not hold Petitioner's efforts to seek relief through the available legal channels against him — particularly where Petitioner's efforts to prevent removal have been successful and he has been granted withholding of removal by an immigration judge to two different countries and Respondents do not allege that Petitioner has engaged in any bad faith dilatory tactics. *See Jalloh II*, 2023 WL 3690259, at *5 ("This Court will not hold Petitioner's efforts to seek relief through the available legal channels against him; in fact, Petitioner's appeal to the BIA resulted in a remand."); *see also, e.g., Vizguerra-Ramirez*, 2025 WL 3653158, at *12 (finding "delays are not attributable" to petitioner where "she initiated withholding-only proceedings and then sought (and obtained) two continuances in those proceedings"); *Arostegui-Maldonado*, 794 F. Supp. 3d at 941 (finding this factor favors petitioner where he "ultimately prevailed on his petition for review" and "beyond the sheer fact that [petitioner] sought withholding-only relief at all," respondents failed to identify "any dilatory tactics he purportedly employed"); *German Santos v. Warden Pike County Correctional Facility*, 965 F.3d 203, 212 (3rd Cir. 2020) ("We will not hold [petitioner's] appeals and applications for discretionary relief against him."). Thus, the fourth factor favors Petitioner.

**5. Delays in the Removal Proceedings Caused by the Government**

Petitioner alleges this factor favors him because "the government is completely at fault for delaying [his] proceedings when it failed to designate Mexico, or any third country, during [his] original removal proceedings" and that all delays "could have been

avoided if the government has designated Mexico during the first proceeding." (Doc. 1, at 21-22). Respondents assert Petitioner's argument "ignores the reality of those arrangements" and expecting the government to "expend valuable resources (both in terms of money and diplomatic favor) in every instance to provide a buffet of options for removal would place an untenable burden on government and result in tremendous waste." (Doc. 16, at 14). The undersigned agrees. Accordingly, the fifth factor is neutral.

**6. The Likelihood of Removal**

"With respect to the sixth factor, the more likely that the alien will be removed, the longer the detention that will be deemed reasonable." *Vizguerra-Ramirez*, 2025 WL 3653158, at *12 (internal quote omitted). Respondents assert this factor is "either neutral or weigh[s] in the government's favor" because Petitioner "has been ordered removed twice," and "[t]here is no question that [Petitioner] *is* removable; the only question is to where he will be removed." (Doc. 16, at 14). It is undisputed that Petitioner has two final orders of removal. (*See* Doc. 19, at 3; Doc. 21, at 1). However, for almost a year after his first removal order became final, Petitioner's immigration court proceedings remained ongoing, ultimately resulting in his case being reopened. (Doc. 19, at 3). Further, it is undisputed that Petitioner cannot be removed to either country to which he has been ordered removed and Respondents have not alleged any country to which they are currently seeking to remove him. (Doc. 19, at 3; Doc. 21, at 1). Petitioner additionally alleges that "he is unlikely to be deported to . . . any third country, given his credible fears of persecution as a gay man." (Doc. 1, at 22). While the Court need not decide whether his removal is likely based on the record before it, it should find that this factor weighs slightly

in favor of Petitioner. *See Vital*, 2026 WL 1965075, at *5 (finding "this factor weighs slightly in Petitioner's favor since the immigration judge granted Petitioner deferral of removal, which suggests that his claim has at least some merit") (internal citation and quotation omitted); *Ramirez*, 2025 WL 1294919, at *7 (same); *Villaescusa-Rios v. Choate*, No. 20-CV-03187-CMA, 2021 WL 269766, at *5 (D. Colo. Jan. 27, 2021) (finding this factor favors the petitioner "because the appeal pending before the BIA concerns the IJ's grant of withholding of removal in favor of [petitioner]").

**7. Conclusion**

In weighing these six factors, the undersigned finds that Petitioner's continued, lengthy detention without an individualized bond hearing has become unreasonable in violation of his due process rights. *Accord de Zarate v. Choate*, No. 23-CV-00571-PAB, 2023 WL 2574370, at *5 (D. Colo. Mar. 20, 2023) (finding that even when "[f]actors one, two, and three weigh in favor of [petitioner]; factors four and five are neutral; and factor six weighs against [petitioner]," the factors favor Petitioner and a finding that Petitioner's Due Process rights had been violated); *Jalloh II*, 2023 WL 3690259, at *6 (same).[12]

[12] The undersigned is aware of a recent case from Judge Jones in this District finding that a non-citizen was not entitled to a bond hearing based on his unreasonably prolonged detention under § 1231. *See Akinsanya v. Blanche*, No. CIV-26-448-J, 2026 WL 1909998, at *3-4 (W.D. Okla. July 2, 2026). However, in a ruling limited to "determining whether, as applied to *this* party, in this circumstances of *this* case," the court in *Akinsanya* found that the non-citizen's due process rights were not violated because he "has received multiple individualized custody reviews under the procedures established by 8 C.F.R. § 241" under "the same considerations that would likely be relevant to any bond determination" making "the probable value of requiring an additional adversarial bond hearing . . . limited." *Id.* at *4. Petitioner's case here is distinguishable where Petitioner has not received such an individualized determination. The undersigned also notes Judge Jones assumed without deciding that *Mathews v. Eldridge*, which analyzes whether

### C. Petitioner's Detention Does Not Violate His Procedural Due Process Rights.

Petitioner also alleges his prolonged detention violates his procedural due process rights. (*See* Doc. 17 at 2-3). Judge Russell in this District recently held procedural due process entitles a non-citizen subject to prolonged detention under § 1226(c) to a bond hearing using the balancing test set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Hernandez*, 2026 WL 1625669, at *3. However, as already discussed, Petitioner is now detained under § 1231. Unlike § 1226 generally, § 1231 does not entitle a non-citizen to a bond hearing. *See Arteaga-Martinez*, 596 U.S. at 582 (holding that while "the Government possesses discretion to provide bond hearings under § 1231(a)(6) . . . this Court cannot say, consistent with *Jennings*, that the statutory text requires them"). Accordingly, the Petitioner is not entitled to a bond hearing under procedural due process. *See, e.g., Rolia v. Mullin*, No. CIV-26-423-R, 2026 WL 1833993, at *1 (W.D. Okla. June 25, 2026) (concluding in the § 1226(a) context that "the process Petitioner is due is the process provided by that statute").[13]

### D. Petitioner is Entitled to a Bond Hearing.

Where a non-citizen has been detained for an unconstitutional length of time in

---

Petitioner's procedural due process rights were violated, provides the proper framework for Mr. Akinsanya's as-applied due process challenge, whereas here the undersigned bases the recommendation on the *Singh* factors regarding whether Petitioner's substantive due process rights were violated.

[13] Furthermore, even if the Court did engage in a *Mathews* analysis, the most to which Petitioner would be entitled is the same relief already recommended—a bond hearing at which the non-citizen bears the burden of proof. *See Hernandez*, 2026 WL 1625669, at *3 (ordering a bond hearing and declining to shift the burden to the government).

violation of due process, non-citizens in Petitioner's position are entitled to an individualized bond hearing.[14] *See Hernandez*, 2026 WL 1625669, at *3 (ordering a bond hearing for a non-citizen subject to unconstitutional prolonged mandatory detention); *Jalloh v. Garland*, No. CIV-22-908-R, 2023 WL 3690252, at *2 (W.D. Okla. May 26, 2023) ("*Jalloh III*") (same); *see also Vital*, 2026 WL 1965075, at *5 (same); *Juarez*, 2024 WL 1012912, at *8 (same). Petitioner requests that any bond hearing the Government be required to bear the burden of proof. (Doc. 1, at 28). However, courts in this District have declined to shift the burden at any future bond hearing. *See, e.g., Hernandez*, 2026 WL 1625669, at *3 (declining to order burden shifting at a bond hearing for a non-citizen subject to unconstitutional prolonged mandatory detention); *Jalloh III*, 2023 WL 3690252, at *2 (same). *But see Vital*, 2026 WL 1965075, at *6 (District of Colorado ordering the government to bear the burden of justifying petitioner's detention by clear and convincing evidence at the bond hearing); *Juarez*, 2024 WL 1012912, at *8 (same).

## V. Recommended Ruling and Notice of Right to Object

For the reasons discussed above, the undersigned recommends that the Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 (Doc. 1) be **GRANTED to the extent it requests habeas relief under 28 U.S.C. § 2241.** The undersigned recommends that the Court order Respondents to provide Petitioner an individualized bond hearing. The

---

[14] To the extent Petitioner raises a claim challenging his prolonged detention pursuant to *Zadvydas* in his Supplemental Brief, that claim was improperly raised for the first time in the Supplemental Brief. Accordingly, the Court need not address it. *See SCO Grp., Inc. v. Novell, Inc.*, 578 F.3d 1201, 1226 (10th Cir. 2009) (recognizing an "argument insufficiently raised in a party's opening brief is deemed waived").

undersigned further recommends that the Court order Respondents to certify compliance by filing a status report within three business days of the Court's order.

**The court advises the parties of their right to object to this Report and Recommendation by August 19, 2026**, under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).[15] The Court further advises the parties that failure to make timely objection to this report and recommendation waives their right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues and terminates the referral to the undersigned Magistrate Judge in the captioned matter.

**ENTERED** this 12th day of August, 2026.

Amanda L. Maxfield
AMANDA L. MAXFIELD
UNITED STATES MAGISTRATE JUDGE

---

[15] Given the expedited nature of these proceedings, the undersigned has reduced the typical objection time to this Report and Recommendation. *See* Fed. R. Civ. P. 72(b)(2) advisory committee's note to 1983 addition (noting that rule establishing 14-day response time "does not extend to habeas corpus petitions, which are covered by the specific rules relating to proceedings under Sections 2254 and 2255 of Title 28."); *see also Whitmore v. Parker,* 484 F. App'x 227, 231, 231 n.2 (10th Cir. 2012) (noting that "[t]he Rules Governing § 2254 Cases may be applied discretionarily to habeas petitions under § 2241" and that "while the Federal Rules of Civil Procedure may be applied in habeas proceedings, they need not be in every instance – particularly where strict application would undermine the habeas review process").